UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



'08 CIV 8168

---------------------------------- X

LOVI YU, Individually And On Behalf Of All
Others Similarly Situated,

           Plaintiff,

  -against-

CHINA SHENGHUO PHARMACEUTICAL
HOLDINGS, INC.; QIONG HUA GAO; and
GUI HUA LAN,

           Defendants.

: INDEX NO. SEP 22 2008
U.S.D.C. S.D.N.Y.

: CLASS ACTION COMPLAINT

: **JURY TRIAL DEMANDED**

---------------------------------- X

      Plaintiff, Lovi Yu, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding China Shenghuo Pharmaceutical Holdings, Inc. ("CSP", or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of CSP between July 23, 2007 through August 20, 2008 (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. § 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the conduct complained of herein occurred in this District and the Company's common stock is traded on the American Stock Exchange ("AMEX") which is headquartered in this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, Lovi Yu, as set forth in her accompanying certification, incorporated by reference herein, purchased CSP securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant CSP is a Delaware Corporation with its principal executive offices located in Kunming within the Yunnan province of the People's Republic of China.  CSP and its subsidiaries engage in the research, development, manufacture, and marketing of pharmaceutical, nutritional supplement, and cosmetic products.  CSP develops products derived from herbs to allegedly treat conditions ranging from cardiovascular and cerebrovascular disease, peptic ulcer disease, acute and chronic peripheral vascular-metabolic disorders, to the common cold.

8.     Defendant Gui Hua Lan ("Gui") at all relevant times herein served as the Company's Chief Executive Officer and Chairman.

9.     Defendant Qiong Hua Gao ("Qiong") at all relevant times herein served as the Company's Chief Financial Officer.

10.    Gui and Qiong are collectively referred to hereinafter as the "Individual Defendants."

11.    Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     were directly involved in the day-to-day operations of the Company at the highest levels;

(c)     were privy to confidential proprietary information concerning the Company and its business and operations;

(d)     were involved in drafting, producing, reviewing and/or disseminating the

false and misleading statements and information alleged herein;

(e)   were aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(f)   approved or ratified these statements in violation of the United States federal securities laws.

12.   As officers, directors and controlling persons of a publicly-held company whose common stock is and was registered with the SEC pursuant to the Exchange Act, and was traded on the AMEX and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and to correct any previously-issued statements that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

13.   CSP is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

14.   The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to CSP under *respondeat superior* and agency principles.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

15.   Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of CSP during the Class Period and who were damaged thereby. Excluded from

the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, CSP's securities were actively traded on the AMEX. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds if not thousands of members in the proposed Class.  Members of the Class may be identified from records maintained by CSP or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of CSP; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     The Class Period begins on July 23, 2007 when the Company issued a materially false and misleading press release and later filed a corresponding Form 8-K with the SEC announcing its preliminary revenue and earnings results for 2Q 2007 ended June 30, 2007.  The press release states in relevant part:

China Shenghuo Pharmaceutical Holdings, Inc. Announces Revenue and Earnings Guidance for Second Quarter 2007 and 2007, 2008 Fiscal Years

KUNMING, China, July 23 /Xinhua-PRNewswire-FirstCall/ -- China Shenghuo Pharmaceutical Holdings, Inc. ("China Shenghuo," "the Company") (Amex: KUN - News), a leading specialty pharmaceutical company engaged in researching, developing, manufacturing and marketing Sanchi-based medicinal products in the People's Republic of China ("PRC"), today announced preliminary revenue and earnings results for the second quarter of 2007.

The Company said it expects to generate revenues of between $6.4 million and $6.5 million and net income of between $1.4 million and $1.5 million for the second quarter, which ended June 30. Management expects to file final second-quarter results by mid-August.

"Financial results in each of our product categories showed significant growth during the second quarter compared to the year-ago period," said Mr. Gui Hua Lan, Chairman and Chief Executive Officer of China Shenghuo.  "We are encouraged by what we expect will be continued growth for the remainder of the

year, led by the strong performance of our flagship product, Xuesaitong Soft Capsules."

For the 2007 fiscal year, which ends December 31, 2007, the Company expects revenues of between $24.0 million and $26.0 million and earnings of between $5.0 million $6.0 million. For the 2008 fiscal year, which ends December 31, 2008, management expects revenues of between $37.0 and $39.0 million and net income of between $8.0 and $8.5 million.

22.     On August 16, 2007, the Company issued a materially false and misleading press release and later filed a corresponding Form 8-K with the SEC, announcing its "record" results for 2Q 2007. The announcement states in relevant part:

China Shenghuo Reports Record Second Quarter 2007 Financial Results

* * * *

Second Quarter 2007 Results

For the second quarter of 2007, net revenues increased 52.0% to $6.4 million from $4.2 million in the same quarter of 2006. Sales of Xuesaitong Soft Capsules, the Company's primary product, accounted for 80% of total sales, unchanged from a year ago. The increase in sales was attributed to improved sales in Beijing, Jiangsu and Henan provinces, increased control over the Company's sales and distribution network, sales price increases and increased commissions designed to stimulate sales. Sequentially, revenues increased 46.9% from the first quarter of 2007.

"The second quarter demonstrated the early positive impact of our revenue growth strategy as we improved both sales and gross profit," said Mr. Lan Guihua, Chairman and Chief Executive Officer of China Shenghuo. "The market has been receptive to our product offerings, and the expansion of our sales network in areas such as Beijing and Shanghai has generated new sources of revenue."

Gross profit for the second quarter increased 81.5% to $4.8 million from $2.6 million a year ago. Gross margin was 75.1%, compared to 62.9% in the second quarter of 2006. The increased gross margin was attributed to an increase in sales prices. The Company believes that gross margin for the full year should be above 70%.

Selling expenses were $2.0 million, compared with $0.8 million a year ago, primarily because of the growth of the sales distribution network, the conversion from cash to accrual accounting, increased commissions to stimulate sales and

increased marketing expenses related to the launch of the Company's new cosmetics line. The Company expects selling expenses for the full year should be in the range of 30% to 35% of sales going forward.

General and administrative expenses increased to approximately $1.4 million from $0.3 million in the same period the prior year. This was primarily due to an increase in the allowance for doubtful accounts of $0.7 million and $0.1 million in consulting fees related to the Company's June public offering.

Total operating expenses in the second quarter increased to $3.4 million from $1.2 million a year ago for the reasons outlined above.

Net income during the quarter was $1.3 million, or $0.07 per diluted share, compared with net income of $1.0 million, or $0.05 per diluted share, in the same quarter of 2006.

Six Month Results

Net revenues for the first six months of 2007 were $10.7 million, compared to revenues of $8.7 million during the same period a year ago. Gross profit was $8.0 million, or 74.5% of sales, up 45.0% from $5.5 million, or 63.4% of sales in the first half of 2006. Operating income was $2.0 million, or 18.3% of sales, down 27.4% from $2.7 million, or 31.2% of sales, in the first half of 2006. Net income for the first half of 2007 was $2.8 million, or $0.15 per diluted share, compared to net income of $1.9 million, or $0.11 per diluted share, in the same period of 2006.

Financial Condition

As of June 30, 2007, the Company had cash and cash equivalents of $1.9 million and working capital of $5.9 million. At June 30, 2007, the Company had $3.9 million in long-term debt and had shareholders' equity of $11.7 million.

Business Outlook

For the 2007 fiscal year, the Company expects revenues of between $24.0 million and $26.0 million and earnings of between $5.0 million and $6.0 million. The Company forecasts earnings per share of between $0.26 and $0.31 for the full fiscal year.

"We are pleased with the strong growth we have seen in our top line so far this year," said Mr. Lan. "As we look forward to the remainder of 2007, we expect our top-line growth to benefit from our investment in the new cosmetics line and expansion of our sales network. We plan to continue to develop new drugs such as our Wei Dingkang Soft Capsules, broaden our offering of OTC drug products, expand our sales network into new regions, and execute the nationwide launch of the new cosmetics line - which we hope will be a significant growth driver in

2008 and beyond."

23.     That same day the Company filed with the SEC its quarterly report for the 2Q

2007 ended June 30, 2007 on Form 10QSB, repeating many of the same statements set forth

above.  The 10QSB was signed by defendant Gui and was separately certified by him and

defendant Qiong pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to, *inter alia*, the

accuracy of the Company's financial statements.

24.     On November 14, 2007, the Company issued a materially false and misleading

press release and later filed a corresponding Form 8-K with the SEC, announcing results for 3Q

2007 ended September 30, 2007.  The announcement states in relevant part:

China Shenghuo Reports Third Quarter 2007 Financial Results

* * * *

Third Quarter 2007 Results

In the third quarter of 2007, net sales were $4.2 million, compared to $5.1 million
in the same quarter of 2006.  Sales of Xuesaitong Soft Capsules, the Company's
primary product, accounted for more than 80% of total sales, unchanged from a
year ago. ...

"The tighter credit policies posed a short-term challenge for China Shenghuo, but
we have since replaced these customers with larger, more established buyers,
which should help to bolster sales during the typically strong fourth quarter," said
Mr. Lan Guihua, Chairman and Chief Executive Officer of China Shenghuo.
"Despite the short-term topline decline, we continue to see new opportunities,
such as the recent launch of our 12Ways® Herbal Skin Care products and
continued development of our Wei Dinkang Soft Capsules and other new
products."

Gross profit for the second quarter was $3.2 million, compared to $3.8 million a
year ago.  Gross margin was 75.3%, up from 74.4% the prior year and 75.1% in
the second quarter of 2007.  The increased gross margin was attributed to an
increase in sales prices.

Selling expenses were $1.5 million, compared with $1.2 million a year earlier,
primarily because of increased advertisement and production expenses related to
the launch of the Company's new cosmetics line, as well as increased salaries for
newly recruited employees in the Company's Shenghuo Cosmetic Co. LTD

subsidiary. However, selling expense declined 23.9% sequentially from $2.0 million in the second quarter of 2007, primarily because of the decline in sales. The Company continues to expect selling expenses for the full year to be in the range of 30% to 35% of sales going forward.

General and administrative expenses declined to approximately $0.3 million from $1.7 million in the third quarter of 2006, primarily because of a decline in receivables and the recovery of approximately $1.0 million of bad debt expenses.

Overall, total operating expenses during the quarter declined 35.7% from the prior year to $1.9 million. Sequentially, operating expenses were reduced 44.1% from $3.4 million in the second quarter of this year.

Net income during the quarter was $0.9 million, or $0.04 per diluted share, compared with net income of $0.3 million, or $0.02 per diluted share, in the same quarter of 2006.

Nine Month Results

For the first nine months of 2007, net sales increased 7.9% to $14.9 million from revenues of $13.8 million a year ago. Gross profit was $11.1 million, or 74.7% of sales, up 19.4% from gross profit of $9.3 million, or 67.5% of sales, in the first three quarters of 2006. Operating income declined to $3.2 million, or 21.7% of sales, from $3.6 million, or 26.0% of sales, the prior year. For the first nine months of 2007, net income increased 68.9% to $3.7 million, or $0.19 per diluted share, from $2.2 million, or $0.13 per diluted share, in the same period of 2006.

Financial Condition

As of September 30, 2007, the Company had cash and cash equivalents of $3.6 million and working capital of $9.8 million. The Company also had $5.3 million in long-term debt and had shareholders' equity of $12.7 million.

Business Outlook

For the 2007 fiscal year, the Company has revised its guidance. It now expects full-year revenues of between $20.0 million and $22.0 million and net earnings of between $4.0 million and $5.0 million. The Company forecasts earnings per share of between $0.20 and $0.25 for the full fiscal year.

"As we look forward to the final quarter of 2007, we expect much of our top-line growth to return as we install new distribution agreements and our new cosmetics line benefits from our retail pharmacy strategy and our expanded sales network. The future of this Company appears quite positive as we prepare for 2008," said Mr. Lan.

25.     The following day on November 15, 2007 the Company filed with the SEC its quarterly report for the 3Q 2007 ended September 30, 2007 on Form 10QSB, repeating many of the same statements set forth above.  The 10QSB was signed by defendant Gui and was separately certified by him and defendant Qiong pursuant to SOX attesting to, *inter alia*, the accuracy of the Company's financial statements.

26.     On April 1, 2008, the Company issued a materially false and misleading press release and later filed a corresponding Form 8-K with the SEC, announcing results for the quarter and fiscal year ended December 31, 2007.  The announcement states in relevant part:

China Shenghuo Reports Full Year 2007 Financial Results

* * *

Full Year 2007 Highlights

- Net sales totaled $20.0 million, in line with guidance
- Gross profit increased 10.1% to $14.9 million
- Gross margin increased to 74.8% from 67.9% a year ago
- Net income increased 33.8% to $4.0 million, or $0.21 per diluted share, in line with guidance
- Completed public offering and began trading on the American Stock Exchange
- Completed phase II clinical trial for Wei Dingkang Soft Capsules
- Commenced full-scale launch of 12Ways[®] Chinese herbal skin care product line
- Opened showcase 12Ways Chinese herbal beauty salon
- Opened 106 12Ways[®] retail counters in Beijing, Dongwan, Hangzhou, Shanghai, Shaoguang and Shengzhen
- Implemented internal controls to comply with U.S. Sarbanes-Oxley Act

Full Year 2007 Results

For the fiscal year ended December 31, 2007, the Company generated net sales of $20.0 million. Sales of Xuesaitong Soft Capsules, the Company's primary product, accounted for 90% of total sales, compared to 80% of total sales in 2006. The Company adopted more stringent credit policies during the second half of 2007, which caused a shift in its customer base and led to a decline in sales volume, which was offset by an increase in prices.

"In 2007, we refocused our sales and marketing efforts to a core of 80 distributors across China based on their business reputation, financial reliability and overall size. Although this was a challenging effort and also reduced our sales in the second half of the year, we tightened production costs to substantially improve gross margin," said Mr. Lan Guihua, Chairman and Chief Executive Officer of China Shenghuo. "We believe our customer base is much stronger, and we are now in an ideal position to seize new opportunities. We successfully launched our 12Ways herbal cosmetics line, and we have opened 106 retail counters in six major cities.

"We recently obtained SFDA approval to manufacture Tian Xin Soft Capsules, an OTC nutritional supplement developed from our flagship product Xuesaitong Soft Capsules, and began phase III clinical trials for Wei Dingkang Soft Capsules, which we are confident will become the next sizeable opportunity in our expanding portfolio."

Gross profit increased 10.1% to $14.9 million, or 74.8% of sales, from $13.6 million, or 67.9% of sales, the prior year. The increase in gross margin was attributed to increased manufacturing efficiency as the Company improved its use of production technology in herb extraction. This resulted in a 5% to 20% increase in the Company's herb extraction rate for various herbs. In addition, the Company reconstructed and designed the water, electricity and steam systems to promote manufacturing efficiency, reduce cost and save energy.

Selling expenses for the full year were $6.8 million, or 34.3% of sales, compared with $5.3 million, or 26.3% of net sales, a year earlier. The increase in selling expenses resulted from three initiatives: higher commissions paid to sales representatives and sales offices as the Company opened new geographic markets, particularly for the 12Ways cosmetics line; the reorganization of sales distribution channels to 80 high-quality distributors from 328 firms in various geographic areas; and the refocusing of sales policies toward specific hospitals and away from whole regions. As a result of these efforts, the Company won back market share and reduced mid-term expenses which should promote improved profitability at the operating level.

General and administrative expenses were $4.9 million, or 24.7% of sales, compared to $3.9 million, or 19.6% of sales, in 2006, primarily because of professional fees associated with the Company's listing on the American Stock Exchange and compliance with the U.S. securities regulations.

Research and development expense was $0.3 million, compared to $28,000 in 2006, as a result of the Company's efforts to enhance product development and improve its manufacturing processes to further reduce production costs.

Overall, total operating expenses in 2007 increased 31.2% from the prior year to

$12.0 million.  Operating income was $2.9 million, down from $4.4 million in 2006.

The Company received a benefit from income taxes of $2.0 million, compared to a provision for income tax of $0.4 million in 2006.  One of the Company's subsidiaries, Shenghuo Medicine Co., Ltd., received income tax relief of approximately $1.0 million from the PRC government for the 2005 and 2006 fiscal years.  The remaining $1.0 million consists of deferred tax benefits from net operating losses and adjustments to bad debt allowances.

Net income for the 2007 fiscal year was $4.0 million, or $0.21 per diluted share, compared with net income of $3.0 million, or $0.17 per diluted share, the prior year, an increase of 33.8%.

Financial Condition

As of December 31, 2007, the Company had cash and cash equivalents of $2.8 million and working capital of $10.9 million.  The Company also had $6.8 million in long-term debt, excluding the current portion, and had stockholders' equity of $13.7 million, up from $7.5 million a year ago. In 2007, the Company used $5.0 million in net cash for operating activities.

"Beginning in late 2007, we implemented an internal control system, which will help us to enhance our operating efficiency and reduce business risks," Mr. Lan said.  "The improved controls have tightened our use of operating cash, which we expect to turn positive toward the end of the 2008 fiscal year."

* * * *

Business Outlook

"In 2008, we will further penetrate our target markets and strengthen relationships with our existing, well-respected distributors.  As the Chinese government has enhanced its national medical health program, which increases the coverage of rural residents, we are confident that demand for our existing pharmaceutical products and those in the pipeline will benefit from expanded coverage, which will in turn increase access to our products," Mr. Lan said.

For the 2008 fiscal year, management expects revenues of between $27.0 million and $30.0 million and net income of between $5.0 million and $6.5 million.

27.     The previous day on March 31, 2007 the Company filed with the SEC its annual report fiscal year ended December 31, 2007 on Form 10KSB, repeating many of the same statements set forth above.  The 10KSB was signed by defendants Gui, Qiong, Bennett, and

Yunhong and was separately certified by Gui and Qiong pursuant to the SOX attesting to, *inter alia*, the accuracy of the Company's financial statements.

28.    On May 20, 2008 the Company filed with the SEC a materially false and misleading quarterly report for 1Q 2008 ended March 31, 2008 on Form 10QSB. The 10QSB was signed by defendant Gui and was separately certified by him and defendant Qiong pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to, *inter alia*, the accuracy of the Company's financial statements.

## THE TRUTH BEGINS TO EMERGES

29.    The truth began to enter the market and/or materialize on August 20, 2008 when the Company issued a press release stating that its prior financial statements for the periods ended June 30, September 30, and December 30, 2007 and the fiscal quarter ended march 31, 2008 can no longer be relied upon and will have to be restated as a result of certain accounting errors. The press release states in relevant part:

China Shenghuo Announces Delay in Filing Form 10-Q for the Fiscal 2008 Second Quarter and Non-Reliance on Previously Issued Financial Statements

KUNMING, China, Aug. 20 /Xinhua-PRNewswire-FirstCall/ -- China Shenghuo Pharmaceutical Holdings, Inc. (Amex: KUN - News; "China Shenghuo" or the "Company"), announced today that the filing of its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2008 (the "Second Quarter 10-Q") would be delayed beyond the filing deadline. The Company had previously filed with the Securities and Exchange Commission, on August 13, 2008, a Form 12b-25 Notification of Late Filing, stating that the Company's Second Quarter 10-Q would not be filed by its due date, August 14, 2008.

This delay is due to a pending internal investigation being conducted by the Audit Committee of the Board of Directors (the "Audit Committee"), based on preliminary information received from Hansen Barnett & Maxwell, P.C., the independent registered public accounting firm of the Company, regarding errors in the accounting for certain sales representative commission advances and trade receivables, the Company's internal controls, the Company's personnel involved and related matters. The Audit Committee intends to engage independent counsel

to assist in the investigation. The Company currently anticipates completing the investigation and addressing any accounting or other corrective action deemed appropriate, including adjustments to its fiscal periods ended June 30, September 30, and December 30, 2007 and fiscal quarter ended March 31, 2008 results of operations, within the next two months. The Company currently anticipates that, pending conclusion of the investigation, the Company will restate its financial statements for its fiscal periods ended June 30, September 30, and December 30, 2007 and fiscal quarter ended March 31, 2008, and such financial statements, and the auditors report on such financial statements, should not be relied upon at this time.

As a result of the Company's failure to timely file its Second Quarter 10- Q, the Company may face potential delisting proceedings by the American Stock Exchange ("AMEX"). Pursuant to the AMEX Company Guide Rule 1009(b), the Company anticipates that it will receive a Deficiency Letter from AMEX as a result of its failure to timely file its Second Quarter 10-Q. The Company can provide no assurances that it will regain compliance with AMEX's continued listing requirements and its failure to do so could result in the delisting of the Company's common stock from AMEX.

30.     The August 20th announcement shocked the market and caused the Company's stock to lose nearly 25% of its value on extraordinary trading volume.

31.     Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

### Applicability of Presumption of Reliance:
### Fraud-on-the-Market Doctrine

32.     At all relevant times, the market for CSP's common stock was an efficient market for the following reasons, among others:

(a)     CSP's stock met the requirements for listing, and was listed and actively traded on the AMEX, a highly efficient and automated market;

(b)     During the Class Period, on average, several hundreds of thousands of shares of CSP stock were traded on a weekly basis, demonstrating a very active and broad market for CSP stock and permitting a presumption of an efficient market;

(c)     As a regulated issuer, CSP filed with the SEC periodic public reports during the Class Period;

(d)     CSP regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     CSP was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace;

(f)     Unexpected material news about CSP was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

33.     As a result of the foregoing, the market for CSP's common stock promptly digested current information regarding SCP from all publicly available sources and reflected such information in CSP's stock price.  Under these circumstances, all purchasers of CSP's common stock during the Class Period suffered similar injury through their purchase of CSP's common stock at artificially inflated prices, and a presumption of reliance applies.

## NO SAFE HARBOR

34.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to

differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of CSP who knew that those statements were false when made.

## FIRST CLAIM
### Violation of Section 10(b) Of
### The Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against Defendants CSP, Gui, and Qiong

35. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36. This claim is asserted against defendants CSP, Gui, and Qiong.

37. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (2) cause Plaintiffs and other members of the Class to purchase and/or sell CSP's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

38. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of CSP as specified herein.

39.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of CSP's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about CSP and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers CSP's securities during the Class Period.

40.    Each Defendants' primary liability, and controlling person liability, arises from the following facts:  (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) the Individual Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of the Individual Defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; (4) each of the Individual Defendants was aware of the Company's dissemination of information to the investing public that they knew or recklessly disregarded was materially false and misleading; and (5) Defendants culpably participated in the wrongful conduct alleged herein.

41.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing CSP's financial condition and future business prospects from the investing public and supporting the artificially inflated or distorted price of its securities.  As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition and business prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

42.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for CSP's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of CSP's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by defendants during the Class Period, Plaintiffs and the other members of the Class acquired and/or sold CSP securities during the Class Period at artificially high prices and were damaged thereby.

43.     At the time of said misrepresentations and omissions, Plaintiffs and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiffs and the other members of the Class and the marketplace known the truth regarding CSP's

financial results, which were not disclosed by defendants, Plaintiffs and other members of the Class would not have purchased or otherwise acquired CSP securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

44.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

45.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

46.    This action was filed within two years of discovery of the fraud and within five years of Plaintiffs' purchases of securities giving rise to the cause of action.

## SECOND CLAIM

### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

47.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.    This Second Claim is asserted against each of the Individual Defendants.

49.    The Individual Defendants acted as controlling persons of CSP within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's revenues and earnings and dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the

decision-making of the Company, including the content and dissemination of the various statements that Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

50.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

51.    As set forth above, CSP and the certain Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

52.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

53.    This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)  Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)  Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: New York, NY
      September 22, 2008

COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C.

By: _____
Lynda J. Grant (LG-4784)
Catherine A. Torell (CT-0905)
150 East 52nd Street
New York, New York 10022
Tel:  (212) 838-7797
Fax:  (212) 838-7745

-and-

Steven J. Toll
Daniel S. Sommers
Jason M. Leviton
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
Tel:  (202) 408-4600
Fax:  (202) 408-4699

*Attorneys for Plaintiff*

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, ___Lovi Yu_____, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed a class action complaint asserting securities claims against China Shenghuo Pharmaceutical Holdings, Inc. (KUN), and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in China Shenghuo Pharmaceutical Holdings, Inc. (KUN) during the Class Period of July 23, 2007 through August 20, 2008 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| 10|16|07 | Buy | 313 | $11.60 |
| | | | |
| | | | |
| | | | |
| | | | |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this ___16th___ Day of ___September___, 2008.

___Lovi Yu_____